**STATE of Missouri, Respondent,**

v.

**Thomas D. NICHOLS, Appellant.**

No. 50626.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 17, 1987.

Walter D. McQuie, Jr., Montgomery City, for appellant.

Daryl K. Hartley, Asst. Pros. Atty., Union, for respondent.

SATZ, Judge.

This is a court tried case. Defendant, Thomas D. Nichols, was convicted of "criminal nonsupport", § 568.040 RSMo.1978, and was sentenced to 180 days in jail. Defendant appeals. We reverse.

Defendant raises several points on appeal. We need only address the point that is dispositive of this case. Defendant contends the state failed to make a submissible case. We agree.

■ To resolve the issue of submissibility, we view the evidence and inferences in the light most favorable to the verdict and disregard all contrary evidence and contrary inferences. *E.g., State v. Overkamp,* 646 S.W.2d 733, 736 (Mo.1983). We do not weigh the evidence but determine whether the evidence was sufficient for a reasonable fact finder to have found the defendant guilty as charged. *E.g., State v. Porter,* 640 S.W.2d 125, 126 (Mo.1982). If the conviction is based solely upon circumstantial evidence, the operative facts supporting the conviction must be consistent with each other, consistent with guilt, inconsistent with any reasonable theory of innocence and must exclude every reasonable hypothesis of innocence. *E.g., State v. Prier,* 634 S.W.2d 197, 199 (Mo. banc 1982).

■ Under our criminal nonsupport statute, "a parent commits the crime of nonsupport if [the] parent knowingly fails to provide, without good cause, adequate support which [the] parent is legally obligated to provide for his minor child...." § 568.-040.1. "*'Support'* means food, clothing, lodging, and medical or surgical attention;" § 568.040.2(1). (emphasis in statute) The object of this statute is to compel recalcitrant parents to fulfill their obligations of care and support. § 568.040, *Comment to*

*1973 Proposed Code.* Parents have a legal obligation to provide for their children, and, under this statute, a failure to do so without good cause is an offense against the state. *E.g., State v. Davis,* 469 S.W.2d 1, 3 (Mo.1971). Prosecution under the statute, however, is not a proceeding to enforce the terms of a dissolution decree. *Id.*[1]

Defendant's argument—the state failed to make a submissible case—focuses on that part of the information charging him with failure to provide his daughter, Tammy Jean Nichols (Tammy), adequate support "between March 9, 1984 and March 9, 1985".[2] To prove this failure, the state relied on two sources of evidence: the testimony of Tammy's mother, defendant's ex-wife, Ruth Ann Nichols (Ruth), and court records which do not reflect any payment by defendant of decretal support during the period in question.

During the marriage of Ruth and defendant, Tammy was born. The marriage was dissolved on October 1, 1974, and Ruth was awarded custody of Tammy. Defendant was ordered to pay child support for Tammy, and these payments were to be made into the registry of the court.[3]

According to Ruth, during the period in question, March 9, 1984 to March 9, 1985, Tammy was attending college in Cape Girardeau. While at school, she lived at the school dormitory. She received a grant which paid for part of her room and board. Ruth "paid" the remaining part of the room and board. Ruth also provided financial support for Tammy, while Tammy was at school, by sending her money to "rent books", to buy materials for classes and to pay for meals on the weekends. Ruth either furnished Tammy's transportation or paid for her transportation to and from

1. In *State v. Davis,* 675 S.W.2d 410 (Mo.App. 1984) Judge Lowenstein lucidly analyzes the history of § 568.040 and the changes in its language.

2. The information reads:
 "The Prosecuting Attorney ... charges the defendant, in violation of Section 568.040, ..., committed the class A misdemeanor of nonsupport, ..., in that between March 9, 1984 and March 9, 1985, ... the defendant know-

ingly failed to provide, without good cause, adequate food, clothing, lodging and financial support for Tammy Jean Nichols, the defendant's minor child for whom defendant was legally obligated to provide such support."

3. Both parties tacitly acknowledge these facts in their respective briefs. The dissolution decree and other court records were admitted into evidence but were not made a part of the record on appeal.

Cape Girardeau. Ruth received no decretal child support payments from defendant during the period in question, and court records admitted over objection showed defendant made no decretal child support payments into the registry of the court during that period.[4]

This was the extent of the state's evidence on the issue of defendant's "support". The state did not call Tammy as a witness. Thus, there was no direct evidence that defendant failed to provide Tammy with "adequate support". The prosecutor did attempt to elicit from Ruth her belief as to whether defendant contacted or made any contribution to Tammy's support during the period in question. Defendant's objections to these questions as hearsay were properly sustained.[5] Stripped to its essentials, the state's evidence showed Ruth had contributed to Tammy's support during the period in question and also showed, during that year, defendant had not made decretal child support payments into the registry of the court.

Based upon this evidence, the trial court "found", among other things, that

> "The State need not, as part of its *prima facie* case, prove ... the defendant failed to provide adequate support to Tammy ... directly, rather than through her mother or the registry of the Court."

Certainly, the state may make a submissible case by circumstantial as well as direct evidence. *See, e.g., State v. Wade,* 696 S.W.2d 860, 862 (Mo.App.1985). The state's circumstantial evidence here, however, failed to make a submissible case.

Arguably, the state's burden of proving defendant failed to provide adequate support for Tammy is the burden of proving a negative.[6] This is not an unacceptable burden in criminal nonsupport cases. This burden of the state has been recognized and approved. *E.g., State v. Arnett,* 370 S.W.2d 169, 173 (Mo.App.1963); *State v. Hobbs,* 220 Mo.App. 632, 291 S.W. 184, 186 (1927). In addition, prosecution under the criminal nonsupport statute is not a proceeding to enforce the terms of a dissolution decree. *State v. Davis,* 469 S.W.2d at 3. Thus, although defendant's failure to pay decretal child support payments to Ruth and the court records showing his failure to pay decretal support payments are relevant to the issue of defendant's failure to meet his common law duty of support, this evidence is not determinative of this issue here.[7] Quite simply, the narrow issue is whether Ruth's testimony about her contribution to Tammy's support and the court records are sufficient evidence for a fact finder to find beyond a reasonable doubt that defendant failed to provide Tammy "adequate support" during the year in question.

What is "reasonable doubt"? For years, courts have wrestled with definitions of "reasonable doubt" and consistently have been pinned to the mat. *See, e.g.,* 9 Wigmore, Evidence § 2497 (Chadbourn rev. 1981). "Reasonable doubt", like its civil counterparts, "preponderance of the evidence" and "clear, cogent and convincing", represent "an attempt to instruct the fact finder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication. Although [these burdens of proof] are quantitatively

---

4. See fn. 3, *supra.*

5. During the prosecutor's direct examination of Ruth, defense counsel requested the court to permit him to voir dire Ruth to determine whether her knowledge of defendant's relations with Tammy was based upon hearsay. The court told defense counsel the voir dire would not be necessary because there was no jury. On cross-examination, defense counsel showed Ruth had no personal knowledge of defendant's relations with Tammy during the time in question.

6. This may be a mythic burden. *See,* Saunders, *The Mythic Difficulty In Proving A Negative,* 15 Seton Hall L.R. 276 (1985).

7. The trial court apparently acknowledged and agreed with this analysis. In admitting the court records over defendant's objection, the court stated:

> "... I tend to agree with you. [The record of nonpayment of decretal support has only marginal relevance], except with the portion of the decree that has to do with custody, child custody. So for that purpose, it will be received and your objection will be overruled."

imprecise, they do communicate to the finder of fact different notions concerning the degree of confidence he is expected to have in the correctness of his factual conclusions." *In re Winship*, 397 U.S. 358, 370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368, 379 (1970) (*Harlan*, J., concurring). In Missouri, we at first defined "reasonable doubt" for the fact finder, *E.g.*, *State v. Drake*, 298 S.W.2d 374, 377 (Mo.1957); *State v. Marshall*, 354 Mo. 312, 189 S.W.2d 301, 306 (1945); then, we prohibited any definition more specific than the term itself, *E.g.*, *State v. Lasley*, 583 S.W.2d 511, 514 (Mo. banc 1979); and, then, once again, we defined it for the fact finder:

> "A reasonable doubt is a doubt based upon reason ...", and "[p]roof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt." See MAI–Cr2d 2.02, (revised, effective Oct. 1, 1984); See also, MAI–Cr3d 302.04.

The state's evidence here does leave "a doubt based upon reason ..." and does not leave a reasonable fact finder "firmly convinced of defendant's guilt". In reviewing the evidence, we must discount the inevitable suspicions raised by defendant's failure to testify as well as suspicions raised by the state's failure to call Tammy as a witness. With these discounts in place, the state established: (1) Ruth "paid for" Tammy's room and board, books, weekend meals and transportation; (2) defendant did not pay decretal child support to Ruth for Tammy; (3) defendant did not pay decretal child support into the registry of the court. The evidence, however, did not establish: (1) whether defendant also provided room and board, books, weekend meals and transportation; (2) whether defendant supplied Tammy with other monies or other items of statutory "support" such as clothing; or, (3) whether defendant contributed support to Tammy directly. Arguably, the inference from this evidence of defendant's innocence is not as valid or as strong as the inference of defendant's guilt. This argument, however, is misdirected and, thus, misses the mark. Defendant does not have to show the inference of his innocence is equal to the inference of his guilt. That may be the burden

of a defendant in a civil case requesting a directed verdict. *E.g.*, *Stark v. American Bakeries Co.*, 647 S.W.2d 119, 125 (Mo. banc 1983). It is not the burden of a defendant in a criminal case requesting a judgment of acquittal on the state's evidence. If the state's case is based solely upon circumstantial evidence, the criminal defendant simply shows the state's evidence leaves room for a reasonable hypothesis of his innocence. *E.g.*, *State v. Prier*, 634 S.W.2d at 199. That is what defendant shows here.

Judgment reversed.

PUDLOWSKI, J., concurs.

CRANDALL, J., dissents, in separate dissenting opinion.

CRANDALL, Judge, dissenting.

I dissent.

The majority opinion would require the child to testify against her father in order for the State to make a submissible case. I do not believe that requirement is either desirable or necessary. Further, if Tammy had been deprived of adequate food, clothing, etc., her father could have been found guilty of non-support, even under the majority opinion. Thus the defendant benefits from the fact that Ruth has provided *all* necessary expenses for their child. That is clearly not the intent of the present non-support statute. *State v. Davis*, 675 S.W.2d 410, 415–416 (Mo.App.1984).

Ruth provided for all necessary expenses for the child. During the time in question defendant made no payments, either to Ruth or to the court. To speculate that defendant made payments directly to the child or possibly to third parties for the benefit of the child, gives him the benefit of a defense without any evidence to support it.

The proof in this case is sufficient for the trier of fact to be, "firmly convinced of defendant's guilt." I would affirm the conviction.